UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HARRY WEATHERBY,

                              Plaintiff,

   -against-                                               1:05-CV-1531
                                                                        (LEK/RFT)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

## DECISION AND ORDER

**I.    BACKGROUND**

    **A.    Procedural History**

Plaintiff Harry Weatherby ("Plaintiff") filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on March 5, 2004. Administrative Transcript ("AT") 41-43, 178-80. The applications were denied initially. AT 31-35, 181. A request was made for a hearing. AT 37. A hearing was held before an Administrative Law Judge ("ALJ") on November 16, 2004. AT 186-234. In a decision dated January 21, 2005, the ALJ found that Plaintiff is not disabled. AT 16-27. The Appeals Council denied Plaintiff's request for review on October 19, 2005. AT 4-7. Plaintiff commenced this action on December 7, 2005 pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner's final decision. Dkt. No. 1.

    **B.    Contentions**

Plaintiff makes the following claims:[1]

(1) The Commissioner erred in finding that neither of Plaintiff's severe impairments, either

---

[1] Plaintiff's counsel failed to cite any supporting case law in Plaintiff's brief and failed to provide specific references to the portions of the record relied upon in the "Argument" section of the brief. See Dkt. No. 7. The Court notes that General Order 18 requires that "[e]ach **contention must be supported by specific reference to the portion of the record relied upon and by citations to statutes, regulations, and cases supporting plaintiff's position**." General Order Number 18 (1)(a), (c) (N.D.N.Y. Sept. 12, 2003) (emphasis added).

alone, or in combination, meet or equal the level of severity of any listed impairment. Dkt. No. 7 at 9-10.

(2) The Commissioner erred in failing to accord the opinion of the treating physician controlling weight. Dkt. No. 7 at 10-11.

(3) The Commissioner incorrectly found that Plaintiff was capable of meeting the exertional demands of sedentary work. Dkt. No. 7 at 10-11.

(4) The Commissioner did not make a proper credibility determination regarding Plaintiff's statements of disabling pain and daily physical and mental limitations. Dkt. No. 7 at 12-13.

(5) The Commissioner's determination that Plaintiff is "not disabled" at Step Five in the sequential analysis must be reversed as it is not supported by substantial evidence in the record. Dkt. No. 7 at 13-14.

Defendant argues that the Commissioner's determination is supported by substantial evidence in the record, and must be affirmed. Dkt. No. 12.

**C.     Facts**

Plaintiff was forty-two years old at the time of the hearing. AT 189. Plaintiff has an associates degree in advanced paralegal studies. Id. Plaintiff's past work experience includes working as a building superintendent and maintenance worker at apartment complexes, a paralegal, and as a supervisor in "human services." AT 190-95. Plaintiff alleges that he became unable to work on November 1, 2003. AT 41. Plaintiff alleges disability due to depression, alcoholism, epilepsy, degenerative disc disease, and herniated discs. AT 60.

1.     **Physical Condition**

Plaintiff apparently injured his lower back in October of 2003 when he lifted trash cans and in November of 2003 when he lifted bags of sand. AT 131, 168.

### a.   Matthew Zmurko, M.D.

From November 6, 2003 to August 11, 2004, Plaintiff treated with Matthew Zmurko, M.D., an orthopaedist. AT 119-27, 163-73. Dr. Zmurko stated that Plaintiff described his pain as occurring in his low back and progressing down his left leg. AT 125. An MRI of Plaintiff's lumbar spine showed a broad degenerative disc protrusion at L4-L5, "which had a mass effect on the left L4 and L5 nerve roots and a 6 millimeter retrolisthesis of L5-S1." AT 123. Plaintiff was treated with epidural steroid injections and prescribed physical therapy. AT 121-22.

On March 24, 2004, Dr. Zmurko opined that Plaintiff is unable to perform any form of manual labor and "he would find it difficult[] doing seated work at the present time because of the low back pain." AT 169.

On May 26, 2004, Dr. Zmurko opined that Plaintiff is able to perform activities "as tolerated and he can do light duty work with no lifting greater than [ten pounds]." AT 166.

On August 11, 2004, Plaintiff returned with complaints of chronic low back pain. AT 163. Dr. Zmurko noted that Plaintiff had received several epidural steroid injections which provided "no significant relief." Id. Dr. Zmurko suggested that Plaintiff try a lumbosacral corset and referred Plaintiff to a pain management specialist. Id. Dr. Zmurko rated Plaintiff at a "partial moderate disability" level and recommended that Plaintiff continue with the same restrictions, meaning "light duty" and no lifting greater than ten pounds. Id.

### b.   John Sullivan, R.P.A.

On November 10, 2003, Plaintiff saw John Sullivan, R.P.A. ("P.A. Sullivan") at Capital Area Medical Group. AT 107. P.A. Sullivan noted that Plaintiff was "obviously having problems walking and bending." Id. Plaintiff exhibited tenderness in the low back and a positive straight leg raise test, "especially on the left side." Id. P.A. Sullivan diagnosed Plaintiff as suffering from back

3

pain that was "probably disc disease." Id.

### c. Amelita Balagtas, M.D.

On April 19, 2004, Plaintiff underwent an orthopedic evaluation at the request of the agency by Amelita Balagtas, M.D. AT 131-33. During the examination, Plaintiff exhibited some limited mobility in his thoracic and lumbar areas. AT 132. Dr. Balagtas diagnosed Plaintiff as suffering from low back pain. AT 133. She opined that Plaintiff "would have some limitations in activities that require bending, lifting, prolonged sitting, standing and walking." Id.

## 2. Mental Condition

### a. Samaritan Hospital

On January 14, 2002, Plaintiff was admitted to Samaritan Hospital after attempting to commit suicide. AT 105-06. He experienced a seizure while in the emergency room due to overdosing on medication. AT 104-05. It was noted that Plaintiff has a history of depression, alcohol abuse, and seizures. Id. He was diagnosed as suffering from depressive disorder not otherwise specified and alcohol dependence. AT 106. It was noted that Plaintiff was concerned with, *inter alia*, his financial situation. Id. Plaintiff was discharged on January 18, 2002. AT 89. His score on the Global Assessment of Functioning ("GAF") was sixty.[2] Id.

On January 27, 2004, Plaintiff was evaluated at Samaritan Hospital. AT 111-18. It was noted that Plaintiff was "homeless, jobless, and under financial strain," that he felt like drinking, and that he is suicidal when he drinks. AT 113, 117. Plaintiff was diagnosed as suffering from alcohol dependence in full remission, depressive disorder, narcissistic traits, and anti-social personality disorder. AT 118. He was assigned a GAF score of fifty. Id.

---

[2] The Global Assessment of Functioning ("GAF") scale considers psychological, social, and occupational functioning on a hypothetical continuum of mental health. Diagnostic and Statistical Manual of Mental Disorders, 34 (American Psychiatric Association, 4th Ed. Text Revision 2000) ("DSM-IV-TR"). A GAF score between fifty-one and sixty indicates the existence of moderate mental health symptoms or moderate difficulties in social, occupational or school functioning. Id.

### b.     Gregory Miller, M.D.

On March 4, 2002, Plaintiff was evaluated by Gregory Miller, M.D., Staff Psychiatrist at Rensselaer County Department of Mental Health Unified Services. AT 128-30. It was noted that Plaintiff had a history of depression, multiple suicide attempts, ongoing alcohol use, and seizures. AT 128. Dr. Miller noted that it was "entirely unclear" if Plaintiff's depressive symptoms "could be treated separately from his alcohol dependence and his continue use of substances. In fact, it is his substance abuse which has wrecked havoc in his life." AT 130. Dr. Miller diagnosed Plaintiff as suffering from Alcohol Dependence, in early remission, and Mood Disorder, not otherwise specified. AT 129. He assigned Plaintiff a GAF score of forty-three.[3] Id.

### c.     Brett T. Hartman, Psy. D.

On April 19, 2004, Plaintiff underwent a psychiatric evaluation at the request of the agency by Brett T. Hartman, Psy. D. AT 134-39. Dr. Hartman diagnosed Plaintiff as suffering from major depressive disorder, moderate, without psychotic features; and pain disorder associated with his general medical condition; and noted that dysthymic disorder should be ruled out. AT 138. Dr. Hartman found that Plaintiff would likely have some degree of difficulty performing a variety of tasks, given his physical problems; has mild attention and concentration problems; has a fair ability to learn new skills; has mild difficulty performing complex tasks independently; would likely have mild to moderate difficulty making appropriate decisions; has mild difficulty relating adequately with others; and would likely have moderate problems dealing appropriately with the normal stressors of life. Id. Dr. Hartman recommended that Plaintiff take part in individual psychological therapy and eventually a vocational training program. Id.

### d.     Terri Bruni, M.D.

---

[3] A GAF score between forty-one and fifty indicates the presence of serious symptoms or a serious impairment in social, occupational, or school functioning. DSM-IV-TR at 34.

On April 27, 2004, Terri Bruni, Ph.D., a State agency review physician, completed a Mental RFC Assessment. AT 146-48. Dr. Bruni indicated that Plaintiff is limited moderately in the following abilities: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and respond appropriately to changes in the work setting. AT 146-146A.

Dr. Bruni also completed a Psychiatric Review Technique form in which she indicated that under categories 12.04 (Affective Disorders), 12.07 (Somatoform Disorders), 12.08 (Personality Disorders), and 12.09 (Substance Addiction Disorders), Plaintiff has a slight restriction of activities of daily living; slight difficulties in maintaining social functioning; often experiences deficiencies in maintaining concentration, persistence, or pace; and had one or two repeated episodes of deterioration, each of extended duration. AT 159.

### e. Richard B. Saul, M.D.

At the hearing held on November 16, 2004, Richard B. Saul, M.D., a psychiatrist, testified that he reviewed the medical evidence and found that Plaintiff's restrictions of daily living is "some[where] between mild to moderate;" Plaintiff's difficulties in maintaining social functioning are "in the moderate range;" Plaintiff's deficiencies in maintaining concentration, persistence or pace are "in the moderate range;" and Plaintiff's repeated episodes of deterioration "extend the duration once or twice," but Dr. Saul opined that alcohol is a "significant contributing factor." AT 221-22. Dr. Saul also stated that there "is no significant contributing factor of [Listing] 12.09 and I don't see him as meeting [the] C2 criteria of [Listing 12.04]." AT 222.

## II. DISCUSSION

### A. Disability Standard

To be considered disabled, a plaintiff seeking DIB or SSI benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. Berry, 675 F.2d at 467 (citations omitted).

7

In this case, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. AT 19. At the second step, the ALJ determined that Plaintiff's affective disorder and disorder of the back are severe impairments. Id. At the third step, the ALJ concluded that these impairments fail to meet or medically equal one of the impairments listed in Appendix 1 of the regulations. AT 19-20. At the fourth step, the ALJ found that Plaintiff retains the RFC to perform a restricted range of sedentary work. AT 20-23. The ALJ therefore concluded that Plaintiff is unable to perform his past relevant work. AT 23-24. At the fifth step, the ALJ considered the testimony of a vocational expert and the Dictionary of Occupational Titles and concluded that Plaintiff is not disabled. AT 25.

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing, *inter alia*, Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. Johnson, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

Williams on behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988)(citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972); see also Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert. denied, 459 U.S. 1212 (1983).

### C.     Listed Impairments

Plaintiff argues in cursory fashion that Plaintiff's severe mental and physical impairments should have been found, either alone or in combination, to meet or equal the level of severity of Listed Impairments "1.00, 12.04, and/or 12.08." Dkt. No. 7 at 10. Defendant argues that the ALJ properly determined that none of Plaintiff's impairments meet or equal the criteria of a listed impairment. Dkt. No. 12 at 19-23.

Pursuant to the third step of the five-step process, if the claimant has an "impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). In cases in which the disability claim is premised upon one or more listed impairments of appendix 1, "the Secretary should set forth a sufficient rationale in support of his decision to find or not to find a

listed impairment." Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982); see also Hendricks v. Commissioner of Social Security, 452 F. Supp.2d 194, 198-99 (W.D.N.Y. 2006).

      **1.**    **Section 1.00**

Plaintiff argues that the ALJ made no findings "at all" regarding "Listing 1.00." Dkt. No. 7 at 10. Plaintiff fails to point to any evidence which supports his assertion.

As noted by Defendant, there is no "Listing 1.00." Dkt. No. 12 at 19. Rather, Section 1.00 of the Listed Impairments, which pertains to the Musculoskeletal System, provides, *inter alia*, definitions and information regarding how musculoskeletal impairments are diagnosed and evaluated. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00.

To the extent that Plaintiff challenges the ALJ's finding that his condition failed to meet or equal Listing 1.04 (Spinal Disorders), the ALJ specifically stated that he considered Listing 1.04.[4] AT 20. The ALJ noted that there is no evidence of nerve root compression. Id. The ALJ also pointed out that Plaintiff is able to ambulate effectively and that Dr. Zmurko, Plaintiff's treating orthopedist, noted that Plaintiff "is ambulating with a normal reciprocating gait pattern. He could do heel and toe raises without difficulty. He has good motor strength of his bilateral lower extremities. His sensation is grossly intact to light touch. He has a negative straight leg raise

---

[4] 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

bilaterally." Id. Thus, the ALJ supported his determination with substantial evidence. Accordingly, the finding is affirmed.

### 2. Listing 12.04

Plaintiff claims that the Agency failed to "make proper factual findings" regarding Listing 12.04 (Affective Disorders). Dkt. No. 7 at 10. Plaintiff fails to point to any evidence which supports his assertion.

Listing 12.04 (Affective Disorders) is characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. Id. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.[5] Id.

The ALJ found that the requirements of Listing 12.04 are not met by the evidence. AT 20. The ALJ explained that Dr. Saul testified that the evidence "shows no more than moderate impairment of the claimant's abilities of daily living, social interaction, and concentration. There have been one or two recent episodes of decompensation, but they were induced by alcohol abuse. Dr. Saul did not see evidence indicating the elements of Part C of Listing 12.04." AT 20.

Similarly, Dr. Bruni opined that Plaintiff has only a slight restriction of activities of daily living; slight difficulties in maintaining social functioning; often has deficiencies in maintaining concentration, persistence, or pace; and had one or two repeated episodes of deterioration. AT 159.

In light of the foregoing, the Court finds that the ALJ's finding is supported by substantial evidence. Therefore, ALJ's decision in this regard is affirmed.

---

[5] With regard to Parts A and B of Listing 12.04, both must be satisfied in order to meet the required level of severity. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04. Part B requires at least two of the following: Marked restriction of activities of daily living; Marked difficulties in maintaining social functioning; Marked difficulties in maintaining concentration, persistence, or pace; or Repeated episodes of decompensation, each of extended duration. Id.

11

      **3.**      **Listing 12.08**

Plaintiff argues that the Agency made no findings "at all" regarding Listing 12.08 (Personality Disorders). Dkt. No. 7 at 10. Listing 12.08 provides that a "personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress. Characteristic features are typical of the individual's long-term functioning and are not limited to discrete episodes of illness. The required level of severity for these disorders is met when the requirements in both A and B are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.08.

The regulations place the burden of establishing disability on a claimant. 20 C.F.R. § 404.1512(a)("In general, you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis. We will consider only impairment(s) you say you have or about which we receive evidence."); (c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled.").

Here, Plaintiff's counsel fails to point to any supporting evidence. Counsel also fails to discuss how his condition meets or equals any part of Listing 12.08. Accordingly, the Court is unable to find that the ALJ erred in this regard.

    **D.**    **Treating Physician**

The medical opinions of a treating physician are given "controlling weight" as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record. 20 C.F.R. §§

404.1527(d)(2), 416.927(d)(2).  In Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004), the Second Circuit provided the following guidance:

> [T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts.  See Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2).  Here, the key medical opinions submitted by Dr. Elliott to the ALJ were not particularly informative and were not consistent with those of several other medical experts.  Thus, Dr. Elliot's opinion as the treating physician does not sustain controlling weight.

Halloran, 362 F.3d at 32.

Even if the treating physician's opinion is contradicted by substantial evidence and thus is not controlling, it still may be entitled to significant weight "because 'the treating source is inherently more familiar with a claimant's medical condition than are other sources.'"  Santiago v. Barnhart, 441 F. Supp. 2d 620, 627 (S.D.N.Y. 2006) (quoting Gonzalez v. Callahan, No. 94 Civ. 8747, 1997 WL 279870, at *11 (S.D.N.Y. May 23, 1997) (citing Schisler v. Bowen, 851 F.2d 43, 47 (2d Cir. 1988))).  However, if not controlling, the proper weight given to a treating physician's opinion depends upon the following factors: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Omission of this analysis is considered failure to apply the proper legal standard, and is grounds for reversal of the Commissioner's determination.  Schaal, 134 F.3d at 505.

Plaintiff argues that the Agency erred in failing to afford controlling weight to the opinion of the treating physician, Dr. Zmurko.  Dkt. No. 7 at 10-11.  Plaintiff claims that Dr. Zmurko found

that Plaintiff "was incapable of performing seated work due to [his] back and radicular leg pain." Id.

The ALJ stated that he assigned "probative weight" to Dr. Zmurko's opinion that Plaintiff was capable of performing "light duty work" with no lifting of more than ten pounds. AT 22. The ALJ further stated that the RFC "in this case rests upon the view of Dr. Zmurko." AT 22. However Dr. Zmurko's definition of the phrase "light duty work" is unknown. Moreover, there is no indication that Dr. Zmurko rendered his opinion with reference to "light work" as defined in the regulations. Further, the ALJ failed to discuss Dr. Zmurko's finding made on March 24, 2004 that Plaintiff would experience difficulty performing "seated work" due to low back pain. See AT 169.

An ALJ, unlike a trial judge, must affirmatively develop the record in light of the "essentially non-adversarial nature of a benefits proceeding," even if the claimant is represented by counsel. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999) (quoting Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) and Echevarria v. Secretary of Health and Human Servs., 685 F.2d 751, 755 (2d Cir. 1982)). The duty of an ALJ to develop the record is "particularly important" when obtaining information from a claimant's treating physician due to the "treating physician" provisions in the regulations. Devora v. Barnhart, 205 F. Supp. 2d 164, 172 (S.D.N.Y. 2002). The regulations thus provide, "We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1). Moreover, "[t]here is ample case law suggesting that an ALJ has an independent duty to make reasonable efforts to obtain a report prepared by a claimant's treating physician in order to afford the claimant a full and fair hearing." Devora, 205 F. Supp. 2d at 174 (collecting

14

cases).

The ALJ erred by failing to contact Dr. Zmurko for clarification of his opinion regarding Plaintiff's abilities, particularly Plaintiff's ability to sit. As noted on March 24, 2004, Dr. Zmurko remarked that Plaintiff "would find it difficult[] doing seated work at the present time because of the low back pain." AT 169. Dr. Zmurko's progress reflect that Plaintiff's low back pain persisted, as Dr. Zmurko noted on August 11, 2004 that Plaintiff reported "no significant relief" from the epidural steroid injections and referred Plaintiff to a pain management specialist. AT 163. Accordingly the matter must be remanded for clarification of Dr. Zmurko's opinion.

### E. Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting Gallardo v. Apfel, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. See 20 C.F.R. §§ 404.1529, 416.929; see also Foster v. Callahan, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a), 416.929(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. Id. §§ 404.1529(c), 416.929(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. Id. §§ 404.1529(c)(3), 416.929(c)(3).

Plaintiff argues that his credibility was improperly evaluated. Dkt. No. 7 at 12-13. In his decision, the ALJ found that Plaintiff's allegations are not totally credible. AT 25. Regarding Plaintiff's physical abilities, the ALJ noted that some of Plaintiff's allegations were not "corroborated" by Dr. Zmurko's progress notes. AT 22. However, the ALJ failed to clearly discuss Plaintiff's credibility in light of the symptom-related factors set forth in the regulations. For instance, the ALJ failed to discuss that on August 11, 2004, Dr. Zmurko referred Plaintiff to a pain management specialist due to Plaintiff's chronic low back pain and noted that the epidural steroid injections "have provided no significant relief." AT 163.

Moreover, the ALJ pointed out that Plaintiff is able to dress himself; lives an "independent life style;" performs some household chores; negotiates stairs; prepares simple meals for himself; and shops for groceries. AT 22. However, the Second Circuit has frequently rejected determinations that a person is not disabled based on minimal activities of daily life not engaged in "for sustained periods comparable to those required to hold a sedentary job." Sarchese v. Barnhart, No 01-CV-2172, 2002 WL 1732802, at *8 (E.D.N.Y. July 19, 2002) (quoting Carroll v. Sec'y of

16

Health & Human Servs., 705 F.2d 638, 643 (2d Cir. 1983) (other citation omitted)).  The mere fact that an individual is mobile and able to engage in some light tasks at his home does not alone establish that he is able to engage in substantial gainful activity.  Lecler v. Barnhart, No. 01 Civ. 8659, 2002 WL 31548600, at *7 (S.D.N.Y. Nov. 14, 2002) (quoting Gold v. Sec. of Health, Ed. & Welfare, 463 F.2d 38, 41 n.6 (2d Cir. 1972)).  Thus, Plaintiff's minimal activities do not alone establish that he is able to engage in substantial gainful activity.

Regarding Plaintiff's mental abilities, the ALJ stated that Plaintiff's "subjective account of his mental condition is subject to question." AT 23.  The ALJ added that "evidence of the claimant's ability to function also detracts from the persuasiveness of his testimony." Id.  The ALJ then cited to a page in Dr. Hartman's report which states that Plaintiff is able to dress, bathe, and groom himself; do his own laundry and shopping; cooks with the microwave oven; does some cleaning; and drives fairly well.  AT 137.  As noted above, the mere fact that an individual is mobile and able to engage in some light tasks at home does not alone establish that he is able to engage in substantial gainful activity.  Lecler, 2002 WL 31548600, at *7 (citations omitted).

Further, the ALJ failed to specifically state the weight assigned to Plaintiff's allegations.  Pursuant to SSR 96-7p, the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, 1996 WL 374186, at *2 (SSA July 2, 1996).

In light of the foregoing, the Court is unable to find that the credibility determination is supported by substantial evidence.  Therefore, the matter must be remanded.

**F.    RFC**

RFC describes what a claimant is capable of doing despite his or her impairments

considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations which go beyond the symptoms. Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999); see 20 C.F.R. §§ 404.1545, 416.945. "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations." Smith v. Apfel, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (citation omitted).

In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing, not simply making conclusory statements regarding a claimant's capabilities. Martone, 70 F. Supp. 2d at 150. SSR 96-8p provides that the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). SSR 96-8p, 1996 WL 374184, at *7 (SSA July 2, 1996). RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy. New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see 20 C.F.R. §§ 404.1560, 416.960.

Plaintiff argues that the RFC finding is flawed in light of Dr. Zmurko's opinion as to Plaintiff's ability to sit. Dkt. No. 7 at 10-11. Plaintiff also argues that the examining physician, Dr. Balagtas, found that Plaintiff would have difficulty performing prolonged sitting. Id. at 11.

The ALJ determined that Plaintiff retained the ability to perform a limited range of sedentary work.[6] AT 20. Regarding Dr. Zmurko, the Court already determined that the ALJ erred by failing to contact Dr. Zmurko for clarification of his opinion. Regarding Dr. Balagtas, the ALJ reviewed some of the details in Dr. Balagtas's report, AT 21, but the ALJ made no mention of Dr. Balagtas's

---

[6] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). Sedentary work generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citation omitted).

findings as to Plaintiff's functional abilities.[7]

In light of the foregoing, the Court is unable to find that the RFC determination is supported by substantial evidence. Therefore, the matter must be remanded.

**G.     Step Five Determination**

Plaintiff argues that the determination made at Step Five is not supported by substantial evidence. Dkt. No. 7 at 13-14. Defendant argues that this finding is well-supported. Dkt. No. 12 at 28-29.

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner to prove that a job exists in the national economy which the claimant is capable of performing. See Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. §§ 404.1560(c), 416.960(c). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions in the country." 20 C.F.R. §§ 404.1566(a), 416.966(a). The ALJ may apply the Medical-Vocational Guidelines ("the grids") or consult a vocational expert ("VE"). See Heckler v. Campbell, 461 U.S. 458, 462 (1983); Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2. If a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional limitations" the application of the grids is inappropriate. Bapp v. Bowen, 802 F.2d 601, 605-06 (2d Cir. 1986).

Because the Court is remanding for clarification of the treating physician's opinion, Plaintiff's credibility, and RFC, the Court directs remand on this issue as well. Upon remand, the ALJ shall obtain the opinion of a vocational expert if Plaintiff's nonexertional limitations present significant limitations. See Bapp, 802 F.2d at 605-06.

---

[7] As noted, Dr. Balagtas found that Plaintiff would have some limitations in activities that require bending, lifting, prolonged sitting, standing, and walking. AT 133.

19

## IV.  CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the decision denying disability benefits is **REVERSED** and this matter **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g)[8] for further proceedings consistent with the above; and it is further

**ORDERED**, that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been **RESCINDED**; and it is further

**ORDERED,** that the Clerk serve this Order on the parties.

**IT IS SO ORDERED**.

DATED:     September 03, 2008
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge

---

[8] Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).